UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED
MAR 2 2 2017
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

CHERI ANN WHITLOCK,

    Appellant,

v.

JOHN PATRICK LOWE,
Chapter 7 Trustee,

    Appellee.

Case No: 5:16-cv-49-RCL

## MEMORANDUM OPINION

### I. INTRODUCTION

This case comes before the Court on appeal from the Bankruptcy Court's October 13, 2015 grant of judgment in favor of the trustee, and the Bankruptcy Court's subsequent December 4, 2015 Order granting in part and denting in part the trustee's motion for attorneys' fees. The debtor in this case, Curtis DeBerry, who is not a party to this appeal, filed a Chapter 7 bankruptcy petition on February 10, 2014. Prior to filing this petition, Mr. DeBerry fraudulently transferred $275,000 to his sister-in-law Cheri Ann Whitlock, the appellant here, to be deposited in a joint bank account held by Ms. Whitlock and Mr. DeBerry's wife, Kathy DeBerry. At some point, Kathy DeBerry's name was taken off the account and it remained solely in the name of Ms. Whitlock. At the direction of the DeBerrys, and still before Mr. DeBerry filed for bankruptcy, Ms. Whitlock made several transfers of money out of that account. After Mr. DeBerry disclosed the $275,000 transfer in the course of his bankruptcy case, the trustee, the appellee here, filed an adversary proceeding seeking to avoid the fraudulent transfer and recover the $275,000 from Ms. Whitlock.

On June 24, 2015, the Bankruptcy Court granted partial summary judgment in favor of the trustee, finding that the $275,000 transfer from Mr. DeBerry was fraudulent and avoidable, and that Ms. Whitlock was an "initial transferee" from whom the trustee could recover the funds.[1] The Bankruptcy Court found, however, that a material issue of fact existed regarding whether the trustee was seeking double recovery of some of the funds in violation of the "single satisfaction" rule, specifically, the $32,000 transferred to Kathy DeBerry and the $200,000 transferred to MBC. After briefing and the presentation of evidence, the Bankruptcy Court concluded that allowing the trustee to recover the $232,000 from Ms. Whitlock did not violate the single satisfaction rule. The Bankruptcy Court later ordered Ms. Whitlock to pay the trustee's attorneys' fees and costs in the amount of $80,409.40.

Ms. Whitlock has appealed the final judgment and the order of attorneys' fees, arguing that the Bankruptcy Court erred in not applying the single satisfaction rule to the funds transferred back to Mr. DeBerry prior to his bankruptcy filing, that it erred in finding that Ms. Whitlock was an initial transferee, that it should not have proceeded to summary judgment or trial before Ms. Whitlock had the opportunity to obtain Kathy DeBerry's testimony, and that the award of attorneys' fees was therefore improper.

The Court finds that the Bankruptcy Court did not err in finding that Ms. Whitlock was an initial transferee, did not err in not applying the single satisfaction rule to the funds allegedly transferred back to Mr. DeBerry, did not err in proceeding to summary judgment and trial before Ms. Whitlock had an opportunity to depose Kathy DeBerry, and therefore did not err in awarding attorneys' fees to the trustee. The decision of the Bankruptcy Court will be affirmed.

---

[1] Because of a settlement with Chantel DeBerry, Ms. Whitlock was entitled to a credit of $33,500—the amount transferred to Chantel from the account. Therefore, the Bankruptcy Court granted judgment against Ms. Whitlock in the amount of $241,500.

2

## II. BACKGROUND

### A. Factual Background

The debtor in this case, Curtis DeBerry, is the former owner of a produce company in Texas. On February 10, 2014, Mr. DeBerry filed a voluntary Chapter 7 bankruptcy petition.[2] Prior to the filing of this petition, on August 26, 2013, Mr. DeBerry's wife, Kathy DeBerry, and his sister-in law, Cheri Whitlock opened a joint account at Wells Fargo Bank. That same day, Mr. and Mrs. DeBerry withdrew $275,000 from one of their bank accounts and obtained a cashier's check in the same amount made payable to Ms. Whitlock. Ms. Whitlock endorsed the check and deposited it into the Wells Fargo account. On August 29, 2013, a Relationship Change Application was submitted to Wells Fargo Bank whereby Kathy DeBerry relinquished her ownership interest in the account, leaving the account only in Ms. Whitlock's name.[3]

Ms. Whitlock subsequently completed the following wire transfers out of the Wells Fargo account: 1) $33,500 to Chantel DeBerry (Curtis and Kathy DeBerry's daughter); 2) $9,200 to Marla Bainbridge; 3) $32,000 to Kathy DeBerry; 4) $200,000 to Masterbaiter Charters, LLC ("MBC").[4] MBC is a Texas limited liability company owned by the debtor, Curtis DeBerry.[5] The

---

[2] Mr. DeBerry was indicted on several charges including wire fraud, making false statements to a financial institution, making false declarations in a bankruptcy proceeding, and concealing assets in bankruptcy. *See United States v. Curtis DeBerry*, No. 5:14-cr-524 (W.D. Tex).

[3] Ms. Whitlock claims that Kathy DeBerry removed her name from the account without informing Ms. Whitlock, and that Ms. Whitlock only learned of this action after she was sued. Ms. Whitlock states that although she signed the Relationship Change Application, she was never shown page 1, which states the change in ownership of the account. The trustee argues that the pages that Ms. Whitlock did see and sign reflected that the form was a "Consumer Deposit Account Relationship Change Application," and that Ms. Whitlock signed as the sole "Tax Responsible Customer" and the sole "New/Remaining Account Owner." The Court need not decide this issue because it finds that Ms. Whitlock was the initial transferee regardless, as explained below.

[4] Ms. Whitlock claims that although she signed each wire transfer, she did not initiate the transfers, did not fill out the transfer requests, and did not direct to whom the money was sent. Rather, Kathy DeBerry would call and tell Ms. Whitlock that a wire transfer was waiting at the bank for her signature, and then Ms. Whitlock would sign. Ms. Whitlock argues that she was only following the DeBerrys instructions. As explained below, the Court finds that even if Ms. Whitlock was following directions, she is still liable to the trustee as an initial transferee.

[5] One of the disputes on appeal is whether the money transferred to MBC and Kathy DeBerry was in essence transferred to the debtor. Ms. Whitlock argues that the money was in fact transferred to the debtor because MBC was

3

money transferred to Kathy DeBerry and MBC was spent prior to the bankruptcy filing. In response to a question regarding why the $200,000 was returned to MBC when the funds had previously belonged to the Mr. DeBerry, he responded "because I told her to . . . because that's where I needed it."

### B. Bankruptcy Court Decision

After Mr. DeBerry filed his bankruptcy petition, and after he (belatedly) disclosed the existence of the $275,000 transfer, the bankruptcy trustee initiated an adversary proceeding against Ms. Whitlock to avoid the transfer and recover the funds, and later moved for summary judgment. The Bankruptcy Court first found that the $275,000 transfer to Ms. Whitlock was made with the actual intent to hinder, delay or defraud creditors under 11 U.S.C. § 544 and § 548(A)(1)(A), and Texas Business and Commercial Code § 24.005(A)(1) as evidenced by the following badges of fraud: 1) Ms. Whitlock did not provide any consideration for the funds; 2) Ms. Whitlock is a family member of Mr. DeBerry's; 3) Mr. DeBerry instructed Ms. Whitlock to transfer $200,000 to MBC; 4) Mr. DeBerry transferred the funds while under great financial stress; 5) the transfer was concealed by Mr. DeBerry; and 6) Mr. DeBerry had been sued prior to the transfer (by Eclipse Berry Farms for fraud in connection with an agreement to obtain strawberries). The Bankruptcy Court also found that the $275,000 transfer was constructively fraudulent and avoidable under 11 U.S.C. § 548(a)(1)(B) because Mr. DeBerry, the debtor, received less than a reasonably equivalent value in exchange for the transfer and was insolvent at the time. It also found that the transfer was avoidable under 11 U.S.C. § 544 and Texas Business & Commercial Code § 24.006(A).

---

the alter ego of the debtor, and because the money transferred to Kathy DeBerry was a community property asset of Curtis and Kathy DeBerry. The Court need not determine whether Ms. Whitlock is correct because it finds that the single satisfaction rule does not apply for other reasons, as explained below.

Finally, the Bankruptcy Court held that Ms. Whitlock was an "initial transferee" from whom the trustee could recover the funds. Section 550 provides "to the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer . . . or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Relying on the Fifth Circuit's "dominion or control" test to determine whether a party is an initial transferee, the Bankruptcy Court found that, regardless of whether Ms. Whitlock knew that Ms. DeBerry had removed her name from the account and whether she was simply being directed by the DeBerrys to make transfers out of the account, she had sufficient dominion and control. The $275,000 check was made out solely to Ms. Whitlock and she endorsed it. She was, in fact, the sole owner of the Wells Fargo account, each of the transfers made from the account were executed by Ms. Whitlock. In sum, Ms. Whitlock had legal title to the funds and no legal obligation to follow the DeBerry's instructions on where to distribute the funds. Therefore, the trustee could recover the funds from Ms. Whitlock as an initial transferee.

The Bankruptcy Court then received additional briefing and evidence regarding whether the trustee was seeking double recovery in violation of the single satisfaction rule of Section 550, which states that "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d). On September 28, 2015, the Bankruptcy Court read onto the record its finding that the trustee did not violate the single satisfaction rule. The court first found that the single satisfaction rule does not apply to pre-petition transfers. Acknowledging that there is little caselaw on point and that no case specifically says when the transfer should be examined in this context, the court agreed with the trustee that the issue was one of statutory interpretation. It concluded that Section 550(a) discusses evaluating fraudulent transfers as they affect the

5

bankruptcy estate and does not relate to the pre-petition relationship between the parties. Noting that a court may not use its equitable powers to circumvent a clear statute, the court found that the statute was clear and that it had to examine the transfers at the time the petition was filed. Furthermore, the court noted that initial transferees are strictly liable for any fraudulent transfers they receive. Thus, it found "that the application of the statute requires the court to look at the transfers that benefited the estate. Here, there is no showing that that occurred. The [d]efendant is strictly liable for the transfers." Transcript Regarding Hearing Held 9/28/2015 at 10:5–9, No. 14-ap-5044 (Bankr. W.D. Tex. Sept. 28, 2015). The Bankruptcy Court later ordered Ms. Whitlock to pay the trustee's attorneys' fees and costs in the amount of $80,409.40.

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a) which provides that district courts have jurisdiction to hear appeals from final judgments and orders of bankruptcy judges.

When a district court reviews the decision of a bankruptcy court, it "functions as an appellate court, applying the standards of review generally applied in federal appeals courts." *Harvey Gulf Int'l Marine, Inc. v. Bennu Oil & Gas, LLC*, 559 B.R. 152, 154 (S.D. Tex. 2016). District courts "review[] orders granting summary judgment de novo, guided by the same standard as the Bankruptcy Court: Federal Rule of Civil Procedure 56." *Id.*

### IV. INITIAL TRANSFEREE

Ms. Whitlock first challenges the Bankruptcy Court's finding that she was an initial transferee liable to the trustee for the fraudulently transferred funds. She argues that the Court should take into account equitable considerations. Specifically, that she never considered the money in the account to belong to her and that Kathy's name was removed from the account

without her knowledge, and therefore she never knew that she was the sole owner. The Court finds that the Bankruptcy Court did not err in finding that Ms. Whitlock was an initial transferee.

### A.     Legal Standards

The Bankruptcy Code provides that "to the extent that a transfer is avoided . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee." 11 U.S.C. § 550(a). Transfers may be avoided if they are fraudulent, as is conceded here. Trustees may recover fraudulent transfers from initial transferees regardless of the initial transferee's good faith. *See Matter of Criswell*, 102 F.3d 1411, 1418 (5th Cir. 1997). Initial transferees are "strictly liable for any fraudulent transfers they receive." *In re Hurtado*, 342 F.3d 528, 532 (6th Cir. 2003)

The Code does not define "initial transferee." The Fifth Circuit has therefore adopted the "dominion or control" test, under which "a party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion or control over the funds." *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). "Dominion or control means legal dominion or control." *Id.* at 141 n.4. A transferee must have "legal right to put the funds to its own use," *i.e*, it is "'free to invest the whole [amount] in lottery tickets or uranium stocks' if it wishes." *Id.* at 141.

If a transferee receives the funds, but is only is a mere conduit or an agent for a party in the transaction, the transferee does not have dominion over the funds. *Id.* at 141 n.3. This situation occurs when "the equitable ownership of the payment is clearly identified as resting in some party other than the one who deposited the check," for example when parties "are operating in areas where the relationship between the defendant and the debtor is highly regulated such as attorneys with escrow accounts, insurance brokers with client trust accounts, and banks with depository

7

accounts." *In re Dunhill Res., Inc.*, No. 03-41264-H2-7, 2006 WL 2668847, at *4 (Bankr. S.D. Tex. Sept. 14, 2006).

### B. Analysis

The Court finds that the Bankruptcy Court did not err in concluding that Ms. Whitlock was an initial transferee under Section 550(a). It is undisputed that the $275,000 check was made payable to her and that she endorsed and deposited it. At the time of the transfer, despite the joint status of the account, Ms. Whitlock was authorized to withdraw funds from the account. Ms. Whitlock argues that "during the lifetime of all parties to a joint account, the account belongs to the parties in proportion to the net contribution by each party to the sums of the deposit," Tex. Est. Code § 113.102, and therefore because the money deposited into the account was provided by Kathy and Curtis DeBerry, that money belonged to Kathy DeBerry, not Ms. Whitlock. This provision of the Texas Estate Code, however, is "do[es] not affect the withdrawal power of those persons under the terms of an account contract." Tex. Est. Code § 113.101(2).

Furthermore, it is undisputed that on August 29, 2013, Ms. Whitlock became the sole legal owner of the account and was the only person authorized to withdraw money from it. Whether she knew that the status of the account had changed from a joint account with Kathy DeBerry to an account solely under her name, Ms. Whitlock had the legal right to put the funds to any use she wished. She had legal dominion and control over the funds and was therefore the initial transferee under Section 550(a). *Cf. In re Hurtado*, 342 F.3d at 534–35 (finding that the mother of a debtor who was the recipient of a fraudulent conveyance made by her son and her daughter in law qualified as the initial transferee because she was given legal title to funds when the funds were placed in her bank account (in order to insulate the debtors), which was inaccessible to the debtors without going through her; she had legal authority to do what she liked with the funds; and she

8

was under no legal obligation to obey the commands of the debtor); *In re Lacina*, 451 B.R. 485, 492 (Bankr. D. Minn. 2011) (finding that the mother of a debtor who received a fraudulent transfer from her daughter and son-in-law into her bank account over which she had sole ownership and dominion was an initial transferee because she "was freely given the funds, effectively eliminating the payment as an asset of the debtors, and she had actual and complete dominion over the funds").

Ms. Whitlock was not a "mere conduit" or agent of the DeBerrys with no right to use the funds as she wished. *Cf. Janvey v. Barr*, No. 3:10-CV-0725-N, 2015 WL 12681608, at *3 (N.D. Tex. Aug. 5, 2015) (finding that executors of an estate who had possession of the assets at issue, but "had no legal option but to distribute the proceeds as commanded" by Texas law and by the decedent's will, were not initial transferees); *In re Goushey*, No. 07-42541, 2011 WL 2470029, at *3 (Bankr. E.D. Tex. June 17, 2011) (finding that a party who was "at most, a messenger" and who "had no right to cash a check made out to [a different party] or to spend any of the money on groceries, let alone lottery tickets or uranium stocks" was not an initial transferee). Although she claims that she was merely following the instructions of the DeBerrys with regard to transfers out of the account, and there is evidence that Curtis DeBerry was in fact instructing her to make such transfers, Ms. Whitlock has failed to point to evidence that legal impediments existed that limited her ability to use or transfer the funds in the account. She may have felt pressure to follow the instructions of her family members, but there is no evidence that she was legally obligated to do so. *Cf. In re Hurtado*, 342 F.3d at 536 (finding that transferee was an initial transferee in part because there was "no evidence of some formal contractual arrangement that required her to obey the debtors' commands" and "[t]he fact that she did not choose to use the funds [for her own benefit] in no way undercuts the fact that she had that ability"); *In re Blatstein*, 260 B.R. 698, 717 (E.D. Pa. 2001) (finding that the bankruptcy court, which found that the transferee—the wife of

9

the debtor—"was merely a pawn who used the monies deposited into her accounts where [the debtor] directed her to do so," erred in holding that she was not an initial transferee because she "always possessed the right—whether she exercised it or not—to decline to follow [the debtor's] instructions").

The Court concludes that Ms. Whitlock qualified as an initial transferee under Section 550(a) and that the Bankruptcy Court did not err in finding the same.

## V.     SINGLE SATISFACTION RULE

Ms. Whitlock argues that because $232,000 of the money fraudulently transferred to her was transferred back to the debtor, and that allowing the trustee to recover that sum from her violates the single satisfaction rule. The Court finds that it does not.

### A.     Legal Standards and The Parties' Arguments

Although trustees may recover fraudulent transfers from transferees under Section 550(a), they are "entitled to only a single satisfaction under . . . this section." 11 U.S.C. § 550(d). Under Section 550(d), "the Trustee cannot obtain twice the full value of a fraudulent transfer by recovering that value from both the initial transferee and a subsequent transferee. The Trustee is limited to a single recovery for each transfer." *In re Prudential of Florida Leasing, Inc.*, 478 F.3d 1291, 1297 (11th Cir. 2007).

The parties devote much of their arguments on appeal to whether a pre-petition return of transferred funds to the debtor can trigger the single satisfaction rule. When a debtor files for bankruptcy, this action "creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also In re Zibman*, 268 F.3d 298, 302 (5th Cir. 2001). Ms. Whitlock notes that "the purpose of the avoidance statutes is 'to restore the estate to the financial condition it would have enjoyed if the transfer had not

occurred.'" Appellant Reply Brief at 7, ECF No. 10. Because she argues that she returned some of the funds to the debtor, she is therefore entitled to credit for the funds returned, and cites several cases holding that the pre-petition return of assets to the debtor "is sufficient to get the transferee off the hook for liability, at least to the extent such returns were made." *Id.* at 8. These decisions stem in large part from *Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.)*, where the court, considering whether the trustee could recover from the debtor's lender post-petition collections on the debtor's accounts receivable, held that "Section 550(d) of the Code empowers courts to prohibit a trustee from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code." 312 B.R. 262, 271 (D.N.J. 2004).

The decisions cited by Ms. Whitlock stand for the proposition that even certain pre-petition transfers back to the debtor are sufficient to prohibit the trustee from recovering from the transferee. *See Grossman v. Bonefant (In re Bonefant)*, No. 12-16482-JNF, 2016 WL 1238855, at *9 (Bankr. D. Mass. Mar. 29, 2016) (finding that the trustee could not recover from the debtor's father funds fraudulently transferred from the debtor to his father, then transferred back to the debtor pre-petition, because "[w]hile the estate was depleted by the Debtor's fraudulent transfers, the financial condition of the bankruptcy estate was restored by the pre-petition repayments of the fraudulent transfers" and a "judgment in the full amount of the Debtor's deposits would result in a windfall to the bankruptcy estate and cause incalculable harm to the Defendant"); *Kapila v. Suntrust Mortg. (In re Pearlman)*, 515 B.R. 887, 896–97 (Bankr. M.D. Fla. 2014) (finding that "'single satisfaction rule' seeks to limit the trustee to a single recovery for his or her fraudulent transfer claim to ensure the bankruptcy estate is put back in its pre-transfer position but receives no windfall through the avoidance provisions" and that "[c]ourts also use § 550(d) . . . to temper

the harsh application of § 550(a) when the estate already has received full repayment of the challenged transfers before the bankruptcy case was filed"); *Lassman v. Patts (In re Patts)*, 470 B.R. 234, 243 (Bankr. D. Mass. 2012) ("The asset the Trustee seeks to recapture, namely the interest in the Property the Debtor conveyed to [the wife] or its equivalent value, was part of the Debtor's bankruptcy estate on the date the estate was created, having been reconveyed to the Debtor through the Retransfer Deed. . . . Simply stated, the transfer the Trustee seeks to avoid has already been undone and the undiminished value of the transferred asset has been restored to the bankruptcy estate. Accordingly, any 'recovery' for the benefit of the estate has already been completed."); *Bakst v. Clarkston (In re Clarkston)*, 387 B.R. 882, 889–91 (Bankr. S.D. Fla. 2008) ("If the Trustee was permitted to recover [proceeds from a home, which had been fraudulently transferred to the defendant then sold, and which were then given to the debtor] from the Defendant, the estate would essentially recover the payments twice and receive a windfall. . . . Crediting the Defendant for payments made to the Debtor between the date of transfer and the Petition Date will restore the estate to the financial condition that would have existed had the transfer never occurred."); *Bakst v. Wetzel (In re Kingsley)*, No. 06-12096-BKC-PGH, 2007 WL 1491188, at *4 (Bankr. S.D. Fla. May 17, 2007), *aff'd*, 518 F.3d 874 (11th Cir. 2008) (finding that "[t]he Trustee possesses the power to avoid fraudulent transfers in order to prevent the depletion of the estate, to promote an equitable distribution of the debtor's assets, and to protect creditors who advanced credit in ignorance of the fraud," but, noting "the issue of windfall to the estate," finding that "to the extent that the fraudulent transfer is repaid pre-petition, the claim is satisfied"); *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348, 352–53 (Bankr. S.D. Fla. 2007) (finding that permitting the trustee to recover funds transferred to the debtor's father prior to filing for bankruptcy, but returned to the debtor (via other family members and the defendants in the

adversary case) pre-petition, "would create a windfall of $12,000.00 that violates the single satisfaction rule of section 550(d)").

The trustee contends that this line of cases were wrongly decided. He argues that the plain language of the Bankruptcy Code directs such a result: "Section 550(d) plainly applies only to preclude a trustee from recovering more than one satisfaction pursuant to § 550(a). Section 550(a), in turn, plainly applies only to recovery of transfers found to be fraudulent or preferential. Because nothing about § 550(a) applies to the funds already in the estate at the time a bankruptcy case is filed, § 550(d) cannot be read to consider funds already in the estate as a 'recovery' that would factor in to whether a 'double recovery' has occurred." Appellee Brief at 14, ECF No. 9. And, "[b]efore a bankruptcy petition is filed, there is no bankruptcy estate. While § 550(d) limits the trustee to a single satisfaction in recovering property for the benefit of the estate under § 550(a), under the plain meaning of the statute, property that does not benefit the estate cannot satisfy an obligation owed under § 550(a)." *Id.* at 15. When Ms. Whitlock transferred the funds to Kathy and MBC there was no bankruptcy petition and therefore no estate existed, so these transfers could not have benefitted the estate. *Id.* The Bankruptcy Court agreed, finding that "the Court may not use its equitable powers under Section 105 to circumvent an otherwise harsh result where the statute is clear. And in this context, the Court thinks the statute is clear that it has to examine the transfers at the time the petition was filed." Transcript Regarding Hearing Held 9/28/2015 at 9:12–20.

**B.     Analysis**

The Court finds that it need not enter the murky world of statutory interpretation, nor does it need to find that the above cited cases were wrongly decided. Those cases focus on the inequities of potential "windfalls" to the trustee if he or she were able to recover from the transferee a sum

that was already been given back to the debtor and had thus become part of the bankruptcy estate (at the time of petition) over which the trustee had control. *See Bonefant*, 2016 WL 1238855, at *9; *Pearlman*, 515 B.R. at 897–98; *Patts*, 470 B.R. at 243; *Clarkston*, 387 B.R. at 891; *Kingsley*, 2007 WL 1491188, at *4–6; *Sawran*, 359 B.R. at 353. As such, "Section 550(d)'s *primary aim* is to prevent the estate from receiving a windfall." *Pearlman*, 515 B.R. at 898 (emphasis added).

The concerns of a windfall to the trustee are not present here. It is undisputed that $200,000 was transferred from Ms. Whitlock to MBC and that $32,000 was transferred from Ms. Whitlock to Kathy DeBerry.[6] It is also undisputed that after these transfers, this money was spent prior to Mr. DeBerry's bankruptcy petition.[7] As a result, that money could not have become part of the bankruptcy estate, which consists of "all legal or equitable interests of the debtor in property *as of the commencement of the case*." 11 U.S.C. § 541(a) (emphasis added). There is simply no danger of a windfall to the trustee when that money does not exist for the purposes of defining the bankruptcy estate. There has been no satisfaction of the trustee's avoidance action. *Cf. Belford v. Cantavero (In re Bassett)*, 221 B.R. 49, 55 (Bankr. D. Conn. 1998) (finding that the defendant, the transferee of real estate from her husband, who received it from the debtor, and who refinanced the property thereby paying off a note originally executed by the debtor and releasing the mortgage, was "shielded from recovery by an even more fundamental defense—satisfaction," and that "the Plaintiff–Trustee's avoidance action was satisfied before it was ever commenced"). If the purpose of Section 550 is, as Ms. Whitlock argues, to restore the estate to the financial condition it would have enjoyed if the fraudulent transfer had not occurred, that purpose has not been fulfilled. The

---

[6] For purposes of this appeal, the Court assumes, without deciding, that these transfers were de facto transfers to the debtor, Curtis DeBerry.

[7] Although Ms. Whitlock does not outwardly acknowledge that the money was spent, she does not refute the trustee's assertions that both the $32,000 transferred to Kathy DeBerry and the $200,000 transferred to MBC was spent prior to the bankruptcy filing.

14

$232,000 at issue here never became part of the estate, even if it was transferred to the debtor. The *estate*, was not restored to its pre-transfer petition because that money is gone.

Ms. Whitlock also argues that the fact that the debtor spent the money pre-petition should not change the analysis because the debtor's estate was not diminished. The Court disagrees. Although the debtor perhaps may have had his hands on the money, his bankruptcy estate was not created until after that money was spent. Section 550(d) is used "to temper the harsh application of § 550(a) when *the estate already has received full repayment* of the challenged transfers before the bankruptcy case was filed. . . . The crux of the argument holds that if the bankruptcy estate receives pre-petition repayment of fraudulent transfers, then the estate, *at filing*, is in the same position it would have been in notwithstanding the transfers." *Pearlman*, 515 B.R. at 896–97 (emphasis added). The estate here, at filing, was not in the same position it would have been in had the transfers not occurred, because the money was no longer in the debtor's possession. And, while it is possible that the trustee could have brought suit to recover such funds from the new transferees, Section 550 gives trustees the option to recover from the initial transferee *or* any immediate or mediate transferees. 11 U.S.C. § 550(a). Ms. Whitlock was the initial transferee, and, as such, the trustee was free to seek recovery from her.

In sum, because the money transferred to the debtor from Ms. Whitlock was spent, it never became part of the bankruptcy estate and the trustee never had access to it. If he recovers this money from Ms. Whitlock, there is no danger of a double recovery or a windfall to the trustee. The Bankruptcy Court did not err in finding that the single satisfaction rule did not prohibit the trustee from recovering from Ms. Whitlock.

## VI.   DEPOSITION OF KATHY DEBERRY

Finally, Ms. Whitlock argues that the Bankruptcy Court should not have proceeded to summary judgment or trial before she was able to depose and obtain the testimony of Kathy DeBerry. At the time of her deposition, Kathy DeBerry pled the Fifth Amendment and did not testify about the Wells Fargo account. Ms. Whitlock states that she issued a subpoena to force Kathy DeBerry to appear at trial as a witness, but that Kathy avoided having the subpoena served on her. With respect to this issue, the Bankruptcy Court found that "under the context right now, under a notice of deposition, where Ms. DeBerry apparently agreed to show up but did not give any testimony other than stating her name, that if . . . Ms. Whitlock wants further assistance from the Court in compelling Ms. DeBerry to do certain things, such as testify, then it's going to have to be subject to a subpoena." Transcript Regarding Hearing Held 9/28/2015 at 11:3–10.

The Court finds that the Bankruptcy Court did not err in proceeding to summary judgment and trial before Ms. Whitlock was able to depose Kathy DeBerry. Ms. Whitlock does not offer any support for her statement that she issued a subpoena to Kathy DeBerry, or that Kathy avoided having the subpoena served on her. She also offers no support for her assertions regarding the content of Kathy's presumed testimony, or for the implied assertion that Ms. DeBerry would not simply have pled the Fifth Amendment again. The Bankruptcy Court found that if Ms. Whitlock wanted Kathy to testify, she needed to serve her with a subpoena. It did not have the authority to compel Kathy's testimony without one. Absent evidence that Ms. Whitlock attempted to subpoena Ms. DeBerry and was unable to do so, the Court finds that the Bankruptcy Court did not err in not staying proceedings pending the obtainment of testimony from Kathy DeBerry.

## VII. ATTORNEYS' FEES

Ms. Whitlock's only argument on appeal is that if the decision of the Bankruptcy Court is reversed for any reason, its award of attorneys' fees to the trustee cannot stand. Because this Court affirms the decision of the Bankruptcy Court and reverses no part of it, there is no basis to reverse its decision regarding attorneys' fees.

## VIII. CONCLUSION

The Court will affirm in full the decision of the Bankruptcy Court. The Bankruptcy Court did not err in finding that Ms. Whitlock was an initial transferee, did not err in not applying the single satisfaction rule to the funds allegedly transferred back to Mr. DeBerry, did not err in proceeding to summary judgment and trial before Ms. Whitlock had an opportunity to depose Kathy DeBerry, and therefore did not err in awarding attorneys' fees to the trustee.

A separate order accompanies this Memorandum Opinion.

Date: March 22, 2017

Royce C. Lamberth
United States District Judge